**David WISE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–1406–CR–408.

Court of Appeals of Indiana.

Feb. 13, 2015.

Michael R. Fisher, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BAILEY, Judge.

### Case Summary

[1] David Wise ("Wise") was convicted of one count of Rape,[1] and five counts of Criminal Deviate Conduct,[2] all as Class B felonies. He now appeals.

[2] We affirm.

### Issues

[3] Wise raises two issues for our review. We restate these as:

I. Whether the trial court abused its discretion when it admitted into evidence handheld camera recordings of videos from a cellular phone; and

II. Whether the trial court abused its discretion when, under Evidence Rule 412, it did not compel certain testimony from Wise's ex-wife.

### Facts and Procedural History

[4] Wise and M.B. were married in 1998. The couple lived together until March 2009.

[5] At some point in 2005 or 2006, M.B. obtained a prescription for Xanax as treatment for anxiety problems. Because the medication made her extremely drowsy, M.B. ceased her use of the medication soon after filling the prescription.

[6] Also during 2005, Wise and M.B. were experiencing difficulties in their marriage. M.B. routinely drank canned soda, and sometime in 2006, Wise began attempting to sneak Xanax into M.B.'s drinks. M.B. detected this on several occasions and confronted Wise about it.

[7] Over time, M.B. became suspicious of Wise. One day in October 2008, Wise left his cellular phone at home, and M.B. discovered it. She accessed the phone and found three videos on it. One video depicted Wise having sexual intercourse with M.B.; two videos depicted Wise attempting to engage in oral sex with M.B. M.B. had no recall of these incidents.

[8] Not knowing how to retain videos directly from the phone, M.B. played the videos on Wise's phone and recorded the

---

1. Ind.Code § 35–42–4–1. All statutory citations refer to the versions of the substantive offenses in effect at the time of the offenses.

2. I.C. § 35–42–4–2.

playback with a second handheld camcorder. She also changed the filenames of the cellular phone's videos, replacing the datestamp filenames with phrases she chose so that Wise would know she had seen the recordings. M.B. subsequently informed Wise that she had found the videos.

[9] The couple eventually divorced, and correspondence leading up to the divorce between Wise and M.B. included acknowledgements by Wise of "drugging you to take advantage of you out of desperation" (Ex. 4 at 9), and "taking advantage of you in your sleep" but that "all I thought of was that next fix of sex." (Ex. 3 at .6.) Wise had also admitted to this behavior to a friend, Melissa Miller ("Miller").

[10] On May 6, 2011, M.B. contacted the Indianapolis Metropolitan Police Department to report Wise's conduct.[3] After an investigation, Wise was arrested.

[11] On August 24, 2011, Wise was charged with one count of Rape and five counts of Criminal Deviate Conduct.

[12] During the pretrial proceedings, M.B. was deposed. During the deposition, Wise sought to obtain testimony from M.B. concerning extramarital relationships, with the claimed purpose of raising questions as to the identity of the individual depicted in the video recordings. The State objected, and Wise moved the trial court to compel M.B.'s testimony on the purported affairs. The trial court denied Wise's motion.

[13] Also during the pretrial proceedings, Wise sought an order *in limine* that would preclude from admission into evidence the video recordings. Wise claimed that the recordings did not satisfy the requirements of the "silent witness" theo-

ry, that the recordings could not be properly authenticated, and that admission of the recordings would violate his right to confrontation under the Sixth Amendment to the United States Constitution. The trial court denied Wise's motion.

[14] A jury trial was conducted on April 28 and 29, 2014. During the trial, Wise timely objected to the admission of the video recordings, and sought to introduce evidence concerning M.B.'s purported extramarital affairs. The trial court admitted the videos into evidence, and did not permit Wise to introduce evidence concerning the purported affairs. At the trial's conclusion, the jury found Wise guilty as charged.

[15] On May 16, 2014, a sentencing hearing was conducted. At the hearing's conclusion, the trial court entered judgments of conviction against Wise. The court then sentenced Wise to ten years imprisonment for each offense, with the sentences for Criminal Deviate Conduct run consecutively to the sentence for Rape. The trial court suspended to probation all five of the sentences for Criminal Deviate Conduct, suspended two years of the Rape sentence to probation, and ordered eight years of the Rape sentence served on in-home detention.[4] This yielded an aggregate sentence of twenty years, with twelve years suspended to probation.

[16] This appeal ensued.

Discussion and Decision

Admissibility of the Video Recordings

[17] On appeal, Wise's first contention is that the trial court abused its discretion when it admitted into evidence the video recordings. Rulings on the admissibility

---

3. M.B. testified at trial that she delayed her report because she wanted her children with Wise to have their father in their lives.

4. During the pendency of this appeal, the trial court found that Wise had violated the terms of work release and ordered that portion of his sentence served as executed time in the Department of Correction.

of evidence fall within the sound discretion of the trial court. *Mays v. State*, 907 N.E.2d 128, 131 (Ind.Ct.App.2009), *trans. denied.* We review such rulings for an abuse of that discretion, which occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* Wise challenges the trial court's admission of the video recordings on three bases: the "silent witness" theory and authentication; best evidence principles; and confrontation. We address each of these in turn.

### "Silent Witness" and Authentication

[18] Wise's first challenge to the trial court's ruling on the admissibility of the video recordings contends that the recordings are inadmissible because they are not capable of being authenticated under the "silent witness" theory.

[19] The "silent witness" theory, as first adopted by this Court, permits the admission of photographs as substantive evidence, rather than merely as demonstrative evidence, so long as the photographic evidence is also relevant. *Bergner v. State*, 397 N.E.2d 1012, 1014–15 (Ind.Ct. App.1979).[5] Addressing solely the question of foundation, the *Bergner* Court hesitated to set forth "extensive, absolute foundation requirements," and instead required a "strong showing of the photograph's competency and authenticity." *Id.* at 1017. Thus, the *Bergner* Court warned against the problems of distortion of images and the possibility of alteration of images in a manner that misrepresents the images taken. Where images were taken by automatic devices, the *Bergner* Court stated, "there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the pro-

cessing and chain of custody of the film after its removal from the camera." *Id.*

[20] The "silent witness" theory has continued in use since its adoption by Indiana courts in 1979, and has since been extended to the use of video recordings. *See, e.g., Mays*, 907 N.E.2d at 131–32. As applied to video recordings:

> "[T]here must be a strong showing of authenticity and competency" and ... when automatic cameras are involved, "there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and changing of custody of the film after its removal from the camera."

*McHenry v. State*, 820 N.E.2d 124, 128 (Ind.2005) (citing *Edwards v. State*, 762 N.E.2d 128, 136 (Ind.Ct.App.2002)). This standard is applied "where there is no one who can testify as to its [the recording's] accuracy and authenticity because the photograph must 'speak for itself' and because such a 'silent witness' cannot be cross-examined." *Edwards*, 762 N.E.2d at 136.

[21] The Indiana Supreme Court recently addressed the "silent witness" theory, and observed that "the foundational requirements ... are vastly different [than] the foundational requirements for demonstrative evidence." *Knapp v. State*, 9 N.E.3d 1274, 1282 (Ind.2014) (citations and quotations omitted). In cases involving the "silent witness" theory, a witness need not testify that the depicted image is an accurate representation of the scene on the day on which the image was taken, and "often could not so testify since he or she was not necessarily there to observe the scene on that day." *Id.* (citations and

5. The *Bergner* Court observed that "some Indiana cases require the photographs aid jurors' understanding of other evidence," but expressed skepticism that this was necessary for admission in all cases. *Bergner*, 397 N.E.2d at 1015.

quotations omitted). Rather, the witness must provide testimony identifying the scene that appears in the image "sufficient to persuade the trial court ... of their competency and authenticity to a *relative certainty.*" *Id.* (emphasis in original) (citations and quotations omitted).

[22] Here, M.B. used a handheld video camera to record playback of videos that had been recorded on Wise's cellular phone. By the time of trial, Wise apparently no longer possessed the phone, and thus the videos could not be retrieved directly from the device. Wise argues the State failed to establish a foundation for admission of the recordings made from the videos played on Wise's phone. He points to M.B.'s changing of the titles of the videos, her lack of knowledge as to how the cellular phone worked and any effect that her use of the phone might have had on the integrity of the recordings, and the lack of testimony concerning the creation of the recordings or what might have happened to them between her initial viewing of them and their recording on the camcorder.

[23] We note that the "silent witness" theory is not an especially neat fit here, because the present case does not present the kind of automated, unwitnessed video contemplated by *Bergner.* The foundation and confrontation aspects of the theory are largely on all-fours with the nature of the recordings here, however, and thus the "silent witness" theory provides an adequate framework for the present case.

[24] Concerning the integrity of the re-recordings themselves, our review of the record reveals that M.B. testified concerning the circumstances under which she found and recorded the video from the phone. M.B. testified that the phone from which the video was recorded belonged to Wise and that the screensaver on the phone displayed a picture of the couple's daughter. Wise testified at various points that the phone belonged to him or looked like one that belonged to him. M.B.'s renaming of the files did not erase time and date information for the videos; indeed, our review of the video recordings revealed that the date and time for the videos was displayed beneath the new names M.B. gave the recordings. M.B.'s testimony established a chain of custody for the VHS tape on which she made the recording of the videos from Wise's cellular phone, as well as for the DVD onto which a neighbor copied the contents of the tape. And M.B. testified at trial that the videos played at trial were the same ones she had recorded, which were in turn in the same condition as she found them when she first played them on October 22, 2008.

[25] Concerning the actual production of the recordings, M.B. testified that when she told Wise about her discovery, he did not deny that he made the recordings. Correspondence between M.B. and Wise included Wise's statement to M.B. that she "has the film." (Ex. 2 at 3.) Miller, a friend of Wise and M.B., testified that in a phone conversation Wise told her that he had been drugging M.B. for sex and recording his sex acts, and would later watch the videos. (Tr. at 303, 305.) And, crucially, M.B. unambiguously identified herself and Wise as having been depicted in their home in the recordings.

[26] While we recognize that in some circumstances there might be difficulty authenticating recordings like those at issue in the instant case, in this case we find no abuse of discretion in the trial court's determination that the State laid an adequate foundation upon which to admit the videos. Accordingly, we conclude that the testimony from M.B., Miller, Wise, and other individuals established a sufficient foundation upon which the trial court could admit the

video recordings into evidence under the "silent witness" theory.

### Best Evidence

■ [27] Wise also challenges the trial court's admission of the videos under best evidence principles. Our Rules of Evidence set forth rules concerning the admissibility of original and copies of various documentary and recorded forms of evidence. Generally, "[a]n original writing, recording, or photograph is required to prove its content" unless the Rules of Evidence or a statute provide otherwise. Ind. Evidence Rule 1002. However, "[a] duplicate is admissible to the same extent as an original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Evid. R. 1003. Moreover, "[a]n original is not required and other evidence" of a recording's contents may be admitted into evidence if:

(a) all originals are lost or destroyed, and not by the proponent acting in bad faith;

(b) an original cannot be obtained by any available judicial process;

(c) the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or

(d) the writing, recording, or photograph is not closely related to a controlling issue.

Evid. R. 1004.

[28] Wise argues that the recorded playback of the videos from his cellular phone, which was reproduced on the handheld video recordings M.B. produced and which the State introduced into evidence, failed to satisfy the best evidence requirements and were thus inadmissible. Specifically, he contends that Evidence Rule 1003 barred admission of the recordings because (1) M.B.'s modification of the recordings on the cellular phone raised a genuine question about the authenticity of the recordings, and (2) the 2½-year delay from when M.B. recorded the videos to when she provided them to police rendered admission of M.B.'s recording as a duplicate unfair.[6]

[29] Wise's argument disregards Rule 1004(a), under which the best evidence rule permits admission into evidence of a duplicate recording when "all originals are lost or destroyed, and not by the proponent acting in bad faith." Here, the original videos were lost after Wise replaced the cellular phone on which the videos were originally recorded and from which M.B. played them for her handheld camera. M.B. changed the titles of the recordings from the date and time on which the recordings were made to titles she assigned them so that Wise would know she had seen the videos. But as the State observes and the trial court agreed, M.B.'s handheld camera recording of the videos on Wise's cellular phone display no evidence of tampering or other alteration, let alone loss of the content of the videos themselves. Wise's argument that M.B.'s renaming of the videos may have indicated some possible alteration is speculation. *See Levi v. State*, 627 N.E.2d 1345, 1350 (Ind.Ct.App.1994) (characterizing as "bald speculation" a defendant's conjecture that an original paper document "may have contained notations not depicted on [a] photocopy"), *trans. denied.* We decline to

---

6. Wise refers in his brief specifically to Evidence Rule 1003(2). We remind counsel that our Evidence Rules were revised effective January 1, 2014, and the revisions no longer reflect a subdivision of Rule 1003.

reverse based upon Wise's best evidence rule argument.

### Confrontation

█ [30] Wise further argues that his confrontation rights were violated when the trial court admitted the videos into evidence.

[31] The Confrontation Clause of the Sixth Amendment to the United States Constitution provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In a line of cases beginning with *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court rejected as violating the confrontation rights of a defendant testimonial hearsay which, though otherwise admissible, nevertheless was introduced into evidence without an opportunity for cross-examination of the declarant. *Id.* at 53–59, 124 S.Ct. 1354. In subsequent cases in the *Crawford* line, the Court went on to hold that a defendant must be afforded the right to conduct a cross-examination of a witness in conjunction with the introduction of evidence such as laboratory reports and other testimonial materials—even when those items of evidence carried "particularized guarantees of trustworthiness." *See, e.g., Melendez–Diaz v. Mass.,* 557 U.S. 305, 314–19, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (noting rejection under *Crawford* of the "particularized guarantee of trustworthiness" test previously established in *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

[32] In adopting the "silent witness" theory, this court in *Bergner* set forth requirements for the admission of automatic camera recordings, which requirements were congruent with the confrontation requirements that the Supreme Court would eventually propound in *Crawford* and its progeny. Specifically, the *Bergner*

Court required a proper foundation for admission of photographic or video evidence, which in turn requires that a defendant have the opportunity to conduct a cross-examination before that evidence may be deemed admissible. *Bergner,* 397 N.E.2d at 1018. These requirements, rooted in confrontation concerns, address the specific difficulties associated with video or other recordings that come from automated systems not monitored by anyone who was a witness to the events portrayed in those recordings.

[33] Here, the State produced M.B. to testify concerning the circumstances under which she obtained the video recordings. She testified that the phone itself belonged to Wise, that she had obtained it in their home, and that she had played recordings already on the device. She identified the location of the three recordings as being in the bedroom she shared with Wise, and she identified herself and Wise in the recordings. Wise subjected M.B. to cross-examination concerning these matters, and both the trial court and the jury were free to disregard M.B.'s statements. Neither did, and Wise's arguments concerning M.B.'s inability to explain the precise functioning of either a cellular phone video camera or a handheld camcorder are little more than invitations to this Court to reweigh the decision of the trial court.

[34] We decline to do so, and accordingly find no confrontation violation associated with admission of the video recording into evidence.

### Evidence Rule 412

█ [35] Wise also contends that the trial court abused its discretion when it did not compel M.B. to provide answers to certain questions Wise propounded to her during a deposition and again at trial because, the trial court concluded, the ques-

tions were directed at obtaining evidence protected under Indiana's rape shield rule.

[36] Indiana's rape shield rule is set forth in Evidence Rule 412. The rule provides that "(1) evidence offered to prove that a victim or witness engaged in other sexual behavior; or (2) evidence offered to prove a witness's sexual predisposition" is, except under certain limited circumstances, inadmissible. Evid. R. 412(a). In criminal prosecutions, there are three exceptions to the inadmissibility of such evidence:

The court may admit the following evidence in a criminal case:

(A) evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

(B) evidence of specific instances of a victim's or witness's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

(C) evidence whose exclusion would violate the defendant's constitutional rights.

Evid. R. 412(b). There also exists a common-law exception to Rule 412 in situations where a victim or alleged victim has admitted the falsity of a prior accusation of rape, or where a prior accusation is demonstrably false. *Conrad v. State,* 938 N.E.2d 852, 855 (Ind.Ct.App.2010) (citing *State v. Walton,* 715 N.E.2d 824, 826–28 (Ind.1999)).

[37] Here, Wise argues that the trial court improperly denied his motion to compel M.B.'s answers during a deposition to questions concerning her sexual past, and improperly denied his subsequent efforts to obtain answers to similar questions at trial. Our Indiana Supreme Court has previously set forth the framework under which pretrial discovery requests are to be reviewed in criminal cases. *See, e.g., Crawford v. State,* 948 N.E.2d 1165, 1167–68 (Ind.2011). To the extent criminal rules do not conflict with our trial rules, the Indiana Trial Rules govern the conduct of discovery in criminal cases. Ind.Crim. Rule 21; *Crawford v. State,* 948 N.E.2d at 1167.

[38] " 'Our discovery rules are designed to allow liberal discovery with a minimum of court involvement in the discovery process.' " *In re WTHR–TV,* 693 N.E.2d 1, 5 (Ind.1998) (quoting *Richey v. Chappell,* 594 N.E.2d 443, 445 (Ind.1992)). Looking to Trial Rules 26 and 34, the Indiana Supreme Court has set forth a three-step test to be used when determining the discoverability of information in criminal cases:

(1) there must be sufficient designation of the items sought to be discovered (particularity); (2) the items requested must be material to the defense (relevance or materiality); and (3) if the first two requirements are met, the trial court must grant the request unless there is a showing of "paramount interest" in nondisclosure.

*Crawford v. State,* 948 N.E.2d at 1168. Within this framework, we review trial court decisions on discovery requests for an abuse of discretion. *In re WTHR–TV,* 693 N.E.2d at 6. We employ the same standard of review when reviewing questions concerning a court's evidentiary rulings at trial.

[39] Here, Wise sought to compel M.B.'s answers to questions posed during discovery and at trial concerning extramarital relationships. Wise contended that because M.B. had consensually engaged in extramarital sex, she may also have been subjected to non-consensual, video-recorded sex. Based upon that theo-

ry, Wise contends that the trial court should have compelled M.B. to provide testimony concerning her sexual history in the event she had been put into a position where someone else might have been able to record the sexual conduct preserved in the video recordings at issue in this case.

[40] During pretrial discovery, Wise sought to compel answers from M.B. Rather than order M.B. to answer all of Wise's questions, the trial court agreed to require M.B. to provide a sworn statement in writing as to whether she knew of any sexual partners who may have created a video recording of sexual conduct with her. As best we can determine from the record, M.B. answered this question in the negative. Based upon this answer, the trial court limited Wise's discovery and did not compel M.B. to answer further questions about her sexual history. The trial court also denied Wise's request to ask similar questions at trial after receiving Wise's written offer of proof. Wise contends these decisions were in error.

[41] We disagree. The core of Wise's contention is that the identity of the male in the videos was subject to a good-faith evidentiary dispute, and that the trial court's denial of his discovery requests prejudiced him in light of his "need to explore whether someone else had the opportunity to have sex with M.B. while she was unconscious." (Appellant's Br. at 22.) Yet the trial court concluded that there was no real dispute, and based its decision on Wise's apparent admission concerning M.B.'s possession and knowledge of the videos, statements and conduct attributed to Wise in M.B.'s and Miller's testimonies, and M.B.'s identification of Wise in the videos themselves. And, again, Wise's contention that someone might—unbeknownst to him or to M.B.—have engaged in video-recorded sexual activity with an unconscious M.B. in a room M.B. identified as the bedroom she and Wise shared is an entirely speculative matter without any real foundation in the evidence presented at trial.

[42] We cannot, then, conclude that the trial court abused its discretion in precluding both Wise's motion to compel testimony and his efforts to obtain such testimony at trial, let alone that Wise was harmed by any error associated with the trial court's decisions.

[43] We reach a similar conclusion as to the confrontation concerns Wise raises. As both Indiana and federal courts have noted, "the Confrontation Clause is not a constitutionally compelled rule of pretrial discovery," but instead "only guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Moore v. State*, 839 N.E.2d 178, 184 (Ind.Ct.App. 2005) (quoting *Rubalcada v. State*, 731 N.E.2d 1015, 1021 (Ind.2000), in turn quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 52–53, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)) (emphasis in original) (internal citations and quotations omitted), *trans. denied.* Confrontation rights do not extend to "disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* (quoting *Ritchie*, 480 U.S. at 53, 107 S.Ct. 989).

[44] Wise had ample opportunity to cross-examine M.B. concerning her identification of Wise in the video and the possibility of a video recording by someone other than Wise. We find no confrontation violation.

## Conclusion

[45] The trial court did not abuse its discretion when it admitted into evidence the re-recordings of the videos M.B. found on Wise's cellular phone. The court also did not abuse its discretion when it did not

permit Wise to obtain pretrial or trial testimony from M.B. concerning any extramarital sexual conduct.

[46]  Affirmed.

ROBB, J., and BROWN, J., concur.