## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 14 2015, 6:16 am
Kevin S. Smith
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeffrey S. Jacob
Jacob, Hammerle & Johnson
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lisa L. Baker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 14, 2015

Court of Appeals Case No.
06A01-1501-CR-11

Appeal from the Boone Superior Court

The Honorable Rebecca S. McClure, Judge

Trial Court Cause No.
06D02-1307-FD-485

**Baker, Judge.**

[1] Lisa Baker appeals her conviction for class D felony Theft,[1] arguing that the trial court erroneously admitted certain exhibits. Baker also contends that the trial court abused its discretion in sentencing her and that her sentence is inappropriate in light of the nature of the offense and her character. Finding no errors and finding that the sentence is not inappropriate, we affirm.

## Facts

[2] In January 2013, Baker was employed as a certified nurse's aide (CNA) by Hearth at Tudor Garden (Hearth), an assisted living facility in Zionsville. At that time, Janice Lingenfelter's mother, Mary Ann Burnett, was a resident at Hearth. Burnett suffered from Alzheimer's disease. Twice a week, Lingenfelter visited her mother and they would have lunch together. Burnett typically had cash on hand to pay for the lunches. At some point, Lingenfelter became suspicious that someone was stealing cash from her mother. Therefore, Lingenfelter and her husband installed a hidden motion-activated video camera in Burnett's room.

[3] On January 4, 2013, Lingenfelter and Burnett had lunch together. Lingenfelter noticed that, although she had taken her mother to the bank earlier that week, Burnett did not have any cash. Lingenfelter put $75 in Burnett's purse upon

---

[1] Ind. Code § 35-43-4-2(a). We apply the version of the statute in effect at the time Baker committed the offense.

returning to her room. Lingenfelter checked the camera to make sure that it could record events taking place near Burnett's purse.

[4] When Lingenfelter returned to visit Burnett on January 7, 2013, she noticed that $40 was missing from Burnett's purse. Lingenfelter took the video camera home so that she could review the footage. When she plugged the camera into her television and watched the footage, she observed a person, later identified as Baker, taking money from Burnett's purse on January 6, 2013.

[5] Lingenfelter reported the theft to Hearth employees, who confirmed that Baker had worked on January 6. On January 13, 2013, Baker viewed the video recording in the presence of her employer, Lingenfelter, and a Zionsville Police officer. She admitted that she had taken something from Burnett's purse, but claimed that it was a tissue. She denied taking any money out of the purse.

[6] On July 30, 2013, the State charged Baker with class D felony theft. Baker's jury trial took place on December 9, 2014, and the jury found her guilty as charged. On December 30, 2014, the trial court sentenced Baker to two years of incarceration. Baker now appeals.

# Discussion and Decision

## I. Admission of Evidence

[7] Baker first argues that the trial court erred by admitting the video footage, an enhanced version of the footage, and a photographic still taken from the footage into evidence. The decision to admit evidence is within the trial court's sound

discretion, and an abuse of discretion occurs only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009).

## A. Video Footage

Baker contends that the State failed to lay a proper foundation for the admission of the video footage. Video recordings and photographs may be admitted as substantive, as opposed to demonstrative, evidence under a "silent witness" theory. *Knapp v. State*, 9 N.E.3d 1274, 1282 (Ind. 2014). As applied to video recordings, admission under the "silent witness" theory requires the following:

> "'[T]here must be a strong showing of authenticity and competency' and ... when automatic cameras are involved, 'there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and changing of custody of the film after its removal from the camera.'"

*Wise v. State*, 26 N.E.3d 137, 141 (Ind. Ct. App. 2015) (quoting *McHenry v. State*, 820 N.E. 124, 128 (Ind. 2005)), *trans. denied*. This standard is applied "where there is no one who can testify as to [the recording's] accuracy and authenticity because the [recording] must 'speak for itself' and because such a 'silent witness' cannot be cross-examined." *Edwards v. State*, 762 N.E.2d 128, 136 (Ind. Ct. App. 2002). Our Supreme Court has recently held that in cases involving this theory, a "witness must provide testimony identifying the scene that appears in the image sufficient to persuade the trial court . . . of their

competency and authenticity to a *relative certainty*." *Knapp*, 9 N.E.3d at 1282 (internal quotation marks and citations omitted) (emphasis original).

[9] In this case, Lingenfelter testified that she and her husband set up the automatic video camera behind a flower arrangement in Burnett's room. She further explained that the camera stored its images internally, was motion activated, would record whenever it detected motion, and was focused on a particular place in the room where Burnett kept her purse. Lingenfelter averred that she took the video camera home and plugged it into her television to watch the footage, and that the video shown at trial was identical to what she had seen on her first viewing. She did not alter the video in any way, either before or after her viewing. Lingenfelter then turned over the video equipment and the footage to Zionsville Police officers. The officers gave detailed testimony as to how they downloaded the video and burned an accurate and unaltered copy to DVD, later introduced as Exhibit 1 at Baker's trial.

[10] This testimony suffices to meet the required strong showing of authenticity and competency. It also establishes the way in which the video camera was operated, the location in which Lingenfelter placed it, and the chain of custody from the time it was recorded until the time the DVD was introduced at trial. Moreover, we note that Baker's own testimony at trial confirms the authenticity of the video. Baker admitted that she was the person in the video and that the footage accurately showed her reaching into Burnett's purse; she merely claimed that she had retrieved a tissue rather than money. The testimony of Lingenfelter, the officers, and Baker herself suffice to establish that the video

footage was what the State claimed it to be, which is sufficient for purposes of authentication. We decline to find error based on the admission of Exhibit 1.

## B. Enhanced Video Footage and Photo Still

[11] Next, Baker argues that the trial court erred in admitting Exhibits 2 and 3 into evidence. Exhibit 2 was a version of the original video where an experienced Indiana State Police Detective had enlarged the center of the video image and sharpened colors and contrast from the original footage. The detective testified that nothing material in the video was substantially altered or changed and that no colors were changed in the enhanced version. He testified in detail as to the way in which he processed the video using Adobe Premier Pro.

[12] Baker contends that an inadequate foundation was laid for this video, but we disagree. The video was not materially altered or distorted. Moreover, the jury and trial court also viewed the original footage and could compare any alterations to weigh the testimony regarding the video's reliability. Baker's arguments regarding this exhibit go to the weight of the evidence rather than its admissibility, and we decline to find error on this basis. *See Knapp*, 9 N.E.3d at 1281-82 (holding that enlarged photographs were properly admitted as evidence); *Arlton v. Schraut*, 936 N.E.2d 831, 837-38 (Ind. Ct. App. 2010) (holding that the trial court should have admitted enhanced photographs that were accurate representations of the evidence).

[13] Exhibit 3 is a photographic still of a single frame taken from the video. The same detective testified that the photograph was in no way altered, and was

instead a basic image capture from one frame of the video. We can only conclude that because the video was properly authenticated as substantive evidence, the photograph taken from that video was likewise properly authenticated. We find no error in the admission of Exhibit 3.

## II. Sentencing

## A. Lack of Remorse as an Aggravating Factor

With respect to Baker's sentence, she first argues that the trial court abused its discretion by finding her lack of remorse as an aggravating factor. Sentencing decisions rest within the trial court's sound discretion and are reviewed on appeal only for an abuse of that discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). One of the ways in which a trial court may abuse its discretion is to consider reasons that are improper as a matter of law. *Sloan v. State*, 16 N.E.3d 1018, 1027 (Ind. Ct. App. 2014).

Lack of remorse is a proper aggravating factor, but it is to be regarded only as a modest aggravator when applied to a defendant who insists upon her innocence. *Bacher v. State*, 686 N.E.2d 791, 801 (Ind. 1997); *Cox v. State*, 780 N.E.2d 1150, 1158 (Ind. Ct. App. 2002). In this case, there is no evidence that the trial court considered Baker's lack of remorse to be more than a modest aggravator. Even if we were to find error, however, Baker challenges none of the remaining aggravators, including Baker's violation of a position of trust, Burnett's elderly age, Baker's criminal history, and Burnett's mental infirmity.

Given the other, substantial, aggravating factors, we decline to reverse based upon the finding of Baker's lack of remorse as an aggravator.

## B. Appropriateness

[16] Finally, Baker contends that her sentence is inappropriate in light of the nature of the offense and her character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp*, 9 N.E.3d at 1292 (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[17] At the time Baker committed the offense, a person convicted of a class D felony faced a sentence of six months to three years, with an advisory sentence of one and one-half years imprisonment. Ind. Code § 35-50-2-7(a). Here, Baker was sentenced to two years imprisonment—six months greater than the advisory term.

[18] As to the nature of Baker's offense, she was a CNA whose job was to care for elderly people in an assisted living facility. She took advantage of one of her charges, who also suffered from Alzheimer's disease, by stealing money from her purse. The reprehensible nature of this offense does not aid Baker's appropriateness argument.

[19] As to Baker's character, she lied to the trial court and the presentence investigation investigator when she reported having no prior criminal history. In fact, she was convicted for theft in Georgia in 1998, and was arrested in Illinois for theft and false reporting in 2001. Although Baker's criminal history is not the worst of the worst, her repeated dishonesty about that history speaks volumes about her character. Given the particularly contemptible nature of the offense, as well as Baker's criminal history and dishonesty, we find that the two-year sentence imposed by the trial court is not inappropriate in light of the nature of the offense and her character.

[20] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.