## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2017, 7:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Angela N. Sanchez
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary Ellis,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 31, 2017<br><br>Court of Appeals Case No.<br>49A05-1701-CR-37<br><br>Appeal from the Marion Superior Court<br><br>The Honorable David Hooper, Magistrate<br><br>Trial Court Cause No.<br>49G08-1601-CM-1822 |

**Crone, Judge.**

## Case Summary

Gary Ellis appeals his conviction, following a jury trial, for class A misdemeanor theft. On appeal, he argues that the trial court violated his Sixth Amendment right to confrontation and committed fundamental error in admitting a surveillance video in the absence of testimony in front of the jury from the State's foundational witness. Finding no constitutional violation and therefore no fundamental error, we affirm.

## Facts and Procedural History

On December 26, 2015, the manager of the Sunglass Hut store in Circle Centre Mall, Danielle Carl, called 911 to report that a pair of sunglasses was stolen from the store on Christmas Eve. Carl reported that she recognized the individual who took the sunglasses, that he was in the mall on a regular basis, and that she believed that he worked at a nearby hotel. Indianapolis Metropolitan Police Department ("IMPD") Detective Stephen Gorgiveski was assigned to investigate the case. Detective Gorgiveski watched the Sunglass Hut store surveillance video from Christmas Eve, which depicted an African-American male removing a pair of sunglasses from a display and then leaving the store without paying. Detective Gorgiveski took a still photograph of the man from the surveillance footage. On January 7, 2016, Detective Gorgiveski sent the still photo in a BOLO ("Be on the Lookout") alert to other police officers who worked in downtown Indianapolis. Tr. Vol. 2 at 52.

[3] IMPD Officer Brycen Garner received the BOLO photo and immediately recognized the individual in the photo. Officer Garner regularly saw the individual during Officer Garner's part-time job as security for IndyGo bus service. Officer Garner was familiar with the man because he had seen him "a couple times a week, a few times a week" over the last four years. *Id*. at 59. The same day Officer Garner received the BOLO photo, he saw the individual exiting a bus in downtown Indianapolis. Officer Garner approached the man and asked for his identification. The individual, Ellis, gave Officer Garner his identification and was calm and cooperative. Officer Garner was confident that Ellis was the same man he saw in the photo.

[4] Thereafter, the State charged Ellis with class A misdemeanor theft. A jury trial was held on November 7, 2016. At the start of the trial, the State indicated that it intended to offer into evidence the surveillance video of Ellis stealing the sunglasses. To lay the foundation for the video's admissibility, the State sought to call Jesse Spencer, a regional trainer for the parent company of Sunglass Hut who was responsible for training store managers regarding loss management policies and investigations, including use of the video surveillance system. Ellis moved to exclude Spencer as a witness because the State had identified him as a potential witness only on the Friday prior to the Monday start of trial. The trial court took the motion to exclude under advisement and decided to hold a hearing outside the presence of the jury to allow defense counsel to question Spencer under oath and to identify any potential objections to his testimony.

[5] After counsel questioned Spencer extensively regarding his qualifications and personal knowledge regarding the video surveillance system, defense counsel clarified that she sought either exclusion of Spencer or a mistrial due to the State's late disclosure of the witness. The trial court denied the motion for mistrial but granted the motion to exclude in part. Specifically, the trial court determined that "[t]he State may ask this witness foundational questions as it relates to the admissibility of video. The State shall not explore any other topics with this witness." *Id.* at 29. Because the court determined that Spencer's testimony would be relevant only to laying a foundation for the admissibility of the video, the trial court decided to "go ahead and do a hearing outside the presence of the jury regarding admissibility of the video." *Id.* at 31. The trial court asked defense counsel if she had any objection to such procedure, and counsel responded, "No, Your Honor." *Id.* The State called Spencer as a witness outside the presence of the jury.

[6] Spencer testified that as a regional trainer for the parent company of Sunglass Hut, he was responsible for training store managers regarding loss management policies and investigations. He stated that he had worked with the Circle Centre store manager, Carl, on numerous occasions involving the surveillance camera system. Spencer explained the digital, motion-activated camera system and how it records the time and date at the top left corner of each video. He further explained that the system stores video for up to ninety days but that video is saved to a DVD if a discrepancy in inventory is reported and the video reveals that a theft has occurred. Spencer admitted that he did not personally

export the video of Ellis's theft and save it on DVD, but he also stated that there was no way for a store employee to edit or tamper with any extracted video. Spencer stated that he had watched the video ten times and that he recognized the store on the video as the one located in Circle Centre Mall.

[7]     Following direct examination of Spencer by the State, defense counsel conducted an extensive cross-examination of Spencer challenging his lack of personal knowledge as to whether the video was genuine and had not been altered. Defense counsel then objected to the admission of the video claiming that Spencer lacked sufficient personal knowledge and that the State had not provided a sufficient foundation for the video's admissibility. The trial court overruled counsel's objection and determined that the video was admissible. Before calling in the jury, the court stated, "I've limited his testimony to basically what we've just gone over. I just assume [sic] have him step down and you can show the jury that [the video has] already been previously admitted as Exhibit A." *Id*. at 41. The trial court explained its belief that due to the limited nature of Spencer's testimony, further testimony in front of the jury was unnecessary, but the court specifically ordered that Spencer was not yet released as a witness in case either party wished to call him in front of the jury. Defense counsel renewed the previous motion for a mistrial due to the late disclosure of Spencer as a witness, and the trial court overruled the objection. The trial court then brought in the jury, granted the State's motion to publish Exhibit A, and permitted the State to play the video for the jury.

[8] At the conclusion of the trial, the jury found Ellis guilty as charged. The trial court imposed a suspended sentence of one year. The court further ordered Ellis to perform forty hours of community service and to pay restitution to Sunglass Hut, as well as costs and fees. This appeal ensued.

## Discussion and Decision

[9] Ellis's sole claim on appeal is that the trial court violated his Sixth Amendment right to confrontation and committed fundamental error in admitting the surveillance video in the absence of testimony in front of the jury from the State's foundational witness. Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. *Noojin v. State*, 730 N.E.2d 672, 676 (Ind. 2000). However, here, because the issue is one of constitutional law, we review Ellis's claim de novo. *See Jones v. State*, 982 N.E.2d 417, 421-22 (Ind. Ct. App. 2013) (constitutional challenges are reviewed de novo), *trans. denied*.

[10] The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him…." In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment prohibits admission in a criminal trial of testimonial statements by a person who is absent from trial, unless the person is unavailable and the defendant had a prior opportunity to cross-examine the person.

[11] Here, however, Ellis made no objection to the trial court's procedure in admitting the video based on *Crawford* or the Sixth Amendment. Instead, his only objections were based on the late disclosure of the foundational witness and the witness's lack of personal knowledge. A party may not object to the admission of evidence on one ground at trial and seek reversal on appeal based on a different ground. *Malone v. State*, 700 N.E.2d 780, 784 (Ind. 1998). Ellis's confrontation claim is therefore waived. *See Small v. State*, 736 N.E.2d 742, 747 (Ind. 2000) (defendant waived confrontation issue where his trial objection was based solely on argument that testimony was hearsay and not subject to hearsay exceptions).

[12] Because Ellis waived this argument, "he can only prevail by meeting the 'daunting' fundamental error standard." *Harris v. State*, 76 N.E.3d 137, 140 (Ind. 2017). This means that Ellis must show "that the trial court should have raised the issue *sua sponte* due to a blatant violation of basic and elementary principles, undeniable harm or potential for harm, and prejudice that makes a fair trial impossible." *Id*.

[13] Ellis has not met his burden to show that fundamental error occurred here. Ellis's argument regarding the trial court's alleged violation of his right to confrontation is unique but misplaced. Ellis does not complain that the trial court permitted any testimonial evidence to be presented against him without first establishing unavailability or a prior opportunity at cross-examination as contemplated by the Confrontation Clause. Indeed, Spencer was available, and Ellis had a prior opportunity to cross-examine him. Rather Ellis complains that

the admission of the video, in the absence of Spencer's testimony in front of the jury, violated his right to confrontation.

[14] We understand that had Spencer testified in front of the jury, Ellis may have been able to undermine the authenticity of the video based on Spencer's alleged lack of personal knowledge. But the fact remains that Spencer did not testify or provide evidence against Ellis. Ellis had ample opportunity to call Spencer to testify in front of the jury to challenge the reliability of the video, but he chose not to. Indeed, after determining the admissibility of the video outside the presence of the jury, the trial court ordered that Spencer was not yet released "in case something [came] up" and the State or defense counsel wished to call him as a witness in front of the jury. Tr. Vol. 2 at 43. Neither party did so.

[15] We agree with the State that Ellis's Confrontation Clause argument appears to conflate the presentation of testimony with the absence of testimony. The Sixth Amendment prohibits the presentation of testimonial evidence under certain circumstances, not the absence of testimonial evidence as Ellis complains of here. Ellis points to no testimonial evidence that was presented in violation of his right to confrontation.[1] Accordingly, Ellis's Sixth Amendment argument is misplaced, and he has not met his burden to show that the trial court committed fundamental error.

---

[1] We reiterate and emphasize that Ellis does not challenge the admissibility of the surveillance video itself or the adequacy of the foundation laid for its authenticity and competency. Thus, there is no "silent-witness" issue here. *See Wise v. State*, 26 N.E.3d 137, 141 (Ind. Ct. App. 2015) (a video recording may be admissible as substantive evidence as long as there is a strong showing of the video's authenticity and competency), *trans. denied*.

Affirmed.

Baker, J., and Barnes, J., concur.